**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Helton,<br><br>    Plaintiff,<br><br>v.<br><br>USAA General Indemnity Company, et al.,<br><br>    Defendants. | No. CV-25-03822-PHX-KML<br><br>**ORDER** |

Defendant USAA General Indemnity Company removed this case from state court based on diversity jurisdiction. Plaintiff Robert Helton seeks remand, arguing USAA failed to establish more than $75,000 is in controversy. Before filing his suit Helton indicated his total damages approached $200,000, not including punitive damages and attorneys' fees. The motion to remand is denied.

**I.     Factual and Procedural Background**

In October 2023, Helton was riding his bicycle when he was hit by a car. (Doc. 1-2 at 10.) The driver of that car was insured by non-party State Farm. Based on Helton's injuries, State Farm paid Helton the applicable policy limit of $100,000. That amount did not "adequately compensate [Helton] for his injuries, medical expenses, lost earnings and general damages." (Doc. 1-2 at 10.) Helton therefore made a claim for underinsured motorist benefits under his own policy with USAA. (Doc. 1-2 at 11.) Helton's underinsured policy limits were "$100,000/$300,000." (Doc. 1-2 at 9.) USAA offered Helton $25,000 despite knowing the "contractual benefit it owed [Helton] under his policy [was] more than

$25,000." (Doc. 1-2 at 11.) Confusingly, Helton alleges USAA "was willing to pay the full contractual benefit" which was more than $25,000, but USAA "failed to offer and/or disclose said amount." (Doc. 1-2 at 11.)

In September 2025, Helton filed suit against USAA in Maricopa County Superior Court. Helton requested his suit be classified as "Tier 2." *See Rieke v. ManhattanLife Assurance Co. of Am.*, No. CV-20-00724-PHX-GMS, 2020 WL 3056123, at *1 (D. Ariz. June 9, 2020) (explaining "tier system" in state court). A Tier 2 suit is one of "intermediate complexity." Ariz. R. Civ. P. 26.2(b)(2). The tier assignment can be "based on the damages claimed in the action," with Tier 2 encompassing those actions "claiming more than $50,000 and less than $300,000 in damages," not including "claims for punitive damages, interest, attorney's fees . . . and costs." Ariz. R. Civ. P. 26.2(c)(3), (e). But the basis for tier assignment is the expected complexity of the case, such as the amount of evidence and witnesses that will be required, not simply the amount of damages at issue. Ariz. R. Civ. P. 26.2(b).

Helton's complaint contains three claims: "declaration of rights"; breach of contract; and bad faith. (Doc. 1-2 at 11-12.) In terms of relief related to the "declaration of rights," the complaint requests a "declaration of the full benefit of the contract." (Doc. 1-2 at 13.) USAA reads that language to mean Helton's complaint is seeking the $100,000 policy limit. (Doc. 11 at 4.) Helton claims that language merely indicates he is seeking all the benefits under the contract that he is entitled to recover, which may or may not be the policy limit. (Doc. 12 at 2.) Whichever reading is correct, the complaint seeks an unspecified amount in compensatory damages, punitive damages, and attorneys' fees.

Based on the Tier 2 designation, the possible compensatory and punitive damages, as well as the award of attorneys' fees, USAA concluded more than $75,000 was in controversy and removed the case to federal court. There is no dispute the parties are completely diverse, but Helton argues the case must be remanded because USAA has not established more than $75,000 is in controversy. Given his own pre-suit communications that he does not disavow, this position has no factual or legal basis.

**II.     Analysis**

To remove the case from state court, USAA's notice of removal was required to "include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Now that Helton has disputed the amount in controversy, both parties must "submit proof" for the court to decide "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The relevant "proof" may include "the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). And "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

To meet its burden, USAA points to the amount of compensatory damages Helton demanded before filing suit, the demand in the complaint that can be read as seeking the $100,000 policy limit, the value of punitive damages, and the value of past and future attorneys' fees. Helton's pre-suit communications outlined compensatory damages that far exceed $75,000, meaning those compensatory damages alone are sufficient to establish more than $75,000 is in controversy. The possibility of punitive damages and an award of attorneys' fees only provide additional evidence the amount in controversy requirement is met.

In April 2025, Helton's counsel sent a demand letter to USAA claiming the accident resulted in Helton incurring $39,558.42 in medical expenses. (Doc. 11-1 at 6.) The accident had also caused Helton to miss 36 weeks of work and, when he was able to return to work, Helton had to take a different position that paid less. Before the accident Helton earned an average of $3,410 per week, meaning the 36 weeks of lost earnings equaled $102,672. When he returned to work in May 2024 at a different position, Helton was paid $800/week less than before the accident. Assuming Helton returned to work on May 1, 2024, there are

1    70 weeks between that date and September 3, 2025, the date Helton filed this suit.
2    Assuming a loss of $800 per week, that is $56,000 in additional lost earnings. Thus, based
3    on Helton's own calculations and demands, he experienced at least $198,230.42
4    ($39,558.42 + $102,672 + $56,000) in compensatory damages before he filed suit. Even
5    accounting for the $100,000 paid by State Farm, there is significantly more than $75,000
6    in controversy.

7    Helton does not argue his pre-suit communications were "inflated and not an honest
8    assessment of damages." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). Nor
9    has Helton made any "attempt to disavow his [communications] or offer contrary
10   evidence" calling the amount of his compensatory damages into question. Without Helton
11   disputing his own estimate of damages, that estimate is sufficient to establish the amount
12   in controversy. *Id.* Accordingly, there is no need to assess in detail the possible values of
13   the punitive damages or attorneys' fees Helton seeks to recover, but both would add to the
14   already-sufficient amount in controversy. *Cf. Greene v. Harley-Davidson, Inc.*, 965 F.3d
15   767, 772 (9th Cir. 2020) (punitive damages can be included "if it is reasonably possible
16   that [defendant] may be liable for the proffered punitive damages amount"); *Fritsch v. Swift
17   Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (when attorneys'
18   fees are recoverable by statute the court "must include future attorneys' fees . . . when
19   assessing whether the amount-in-controversy requirement is met."). Helton's only
20   argument on attorneys' fees is that they are too speculative, but the Ninth Circuit has
21   explicitly rejected that concern. *Fritsch*, 899 F.3d at 796. A small amount of attorneys'
22   fees, such as $10,000, is overwhelmingly likely should Helton prevail. That amount only
23   adds to an amount in controversy that easily exceeds $75,000.
24   /
25   /
26   /
27   /
28   /

Accordingly,

**IT IS ORDERED** the Motion to Remand (Doc.8) is **DENIED**.

**IT IS FURTHER ORDERED** the Stipulation to Stay (Doc. 13) is **DENIED AS MOOT**. The parties shall file their Rule 26(f) Joint Case Management as required by Doc. 7 within ten days of this order.

Dated this 17th day of December, 2025.

Honorable Krissa M. Lanham
United States District Judge